IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISIONS

| | |
|---|---|
| DARLENE VIRGINIA RICHARDSON,<br><br>Plaintiff,<br><br>v.<br><br>STERLING INFOSYSTEMS, INC.,<br><br>Defendant. | Case No.: 1:24-cv-00142 |

## COMPLAINT

Darlene Virginia Richardson ("Plaintiff" or "Ms. Richardson") by and through her counsel brings the following Complaint against Sterling Infosystems, Inc. ("Defendant" or "Sterling") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted felon and thief.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of felony theft.  Defendant's reporting is grossly inaccurate and untrue.

1

4.  Plaintiff has never been charged with a crime in her life.

5.  Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate felony conviction, which does not belong to Plaintiff.

6.  Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Baltimore City, Maryland regarding the felony conviction prior to publishing Plaintiff's report to her prospective employer.

7.  Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle name and date of birth, address history and Social Security Number.

8.  Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.  Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep;

lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13. Darlene Virginia Richardson ("Plaintiff" or "Ms. Richardson") is a natural person residing in Baltimore, Maryland, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant Sterling Infosytems, Inc. ("Defendant" or "Sterling") is a corporation doing business throughout the United States, including the State of Maryland and in this District, and has a principal place of business located at 1 State Street Plaza, New York, NY 10004 and they can be served at their registered agent address, Paracorp Incorporated, 1 Commerce Plaza, Albany, NY 12210.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**STATUTORY BACKGROUND**

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf  ("CFPB Report").

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a felony conviction that belongs to an unrelated consumer who has a different middle name, date of birth, address history and Social Security Number than Plaintiff.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Medical Services of America

40. Plaintiff, a licensed social worker, decided to find a second job to work part time. After conducting research to find an ideal job that would work best with her current full-time position, Plaintiff settled on applying for a social worker position with Medical Services of America.

41. In early November 2023, Ms. Richardson submitted her application for employment with Medical Services of America and was invited for an interview.

42. Ms. Richardson aced the interview and was offered the social worker position.

43. The job offer was conditioned on Ms. Richardson passing a background check ("employment report.").

**Defendant Published an Inaccurate Background Check Report to Medical Services of America**

44. Medical Services of America contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

45. On December 1, 2023, Medical Services of America ordered a criminal background check on Plaintiff from Defendant.

46. On or about December 2, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Medical Services of America.

47. Within that employment report, Defendant published inaccurate information about Plaintiff.

48. Specifically, Defendant's employment report about Plaintiff included a felony conviction for theft, case No. 116075005, which does not belong to Plaintiff.

49. The grossly inaccurate and stigmatizing felony theft conviction from Baltimore City, Maryland appeared in the employment report as follows:



50. The felony criminal conviction reported by Defendant about Plaintiff to Medical Services of America *does not* belong to Ms. Richardson.

51. Plaintiff has never been charged with or convicted of any crime in her life.

52. A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated female, Darlene Richardson ("Convicted Felon Darlene").

53. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the felony conviction, it would have seen obvious discrepancies between Convicted Felon Darlene and Plaintiff.

54. The discrepancies that should have caused Defendant to realize Ms. Richardson is not the same person as Convicted Felon Darlene include the following:

 (a) Plaintiff's legal name is "Darlene Virginia Richardson" but the criminal records belong to a "Darlene Richardson" with no middle name, which is clear from the face of the employment report and the widely available public records from Baltimore City, Maryland;

9

(b) Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject employment report, is May 25, 1968, yet the underlying public court records indicate that there is no birth date recorded for Convicted Felon Darlene. Upon information and belief, Ms. Richardson has a different birth date than Convicted Felon Darlene;

(c) Plaintiff's Social Security Number, which was provided to Defendant is contained on the face of the subject employment report is entirely different than that of Convicted Felon Darlene; and,

(d) Plaintiff's address, which was provided to Defendant before publishing the grossly inaccurate report, is different from the Convicted Felon Darlene's address.

55. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

56. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal conviction belongs to an unrelated individual that does not have Plaintiff's same middle name, Plaintiff's same date of birth, Plaintiff's same Social Security Number, and Plaintiff's same address history.

57. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Medical Services of America Does Not Proceed with a Hiring Action for Plaintiff**

58. On December 4, 2023, Plaintiff received a pre-adverse notice from Medical Services of America.

59. Medical Services of America informed Ms. Richardson that as of December 4, 2023, she would not be onboarded as a direct result of the felony conviction reported by Defendant.

60. Plaintiff was expecting to begin work on December 11, 2023. She was left confused and perplexed by the communication that Medical Services of America no longer planned to onboard her.

61. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal conviction of another individual, namely Convicted Felon Darlene, was published in the employment report about Ms. Richardson Defendant generated and sold to Medical Services of America.

62. Plaintiff has never been convicted of any crime all her life.

63. Ms. Richardson was very panicked, confused, and concerned about the impact of Convicted Felon Darlene's serious criminal conviction reported on the subject employment report – specifically, the impact of the same on her future.

64. Specifically, Defendant matched Plaintiff and Convicted Felon Darlene and published the criminal record of Convicted Felon Darlene onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Medical Services of America, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

65. Upon receiving the pre-adverse notice from Medical Services of America, Ms. Richardson immediately contacted Defendant on or about December 4, 2023, desperate to secure employment with Medical Services of America and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed with Defendant via telephone and email.

66. Plaintiff identified herself and provided information to Defendant to support her dispute.

67. Plaintiff specifically disputed the criminal record of Convicted Felon Darlene.

68. Plaintiff specifically stated that the criminal record of Convicted Felon Darlene does not belong to Plaintiff.

69. Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Darlene's criminal record from any employment report about Plaintiff.

70. On December 5, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute, conceded its error and removed the criminal record from the subject employment report.

71. Defendant also communicated to Plaintiff that it had issued a corrected employment report to Medical Services of America.

72. Plaintiff continued to follow up with Medical Services of America hoping that the job offer would be reinstated.

73. However, Plaintiff received a text from Medical Services of America on December 6, 2023, informing her they did not receive the corrected report.

74. Medical Services of America delayed Plaintiff's previously arranged start date because of the inaccurate background report and eventually gave Plaintiff a new date for Orientation.

75. Ms. Richardson reasonably believes that due to Defendant's inaccurate reporting in the first instance, Medical Services of America formed a negative opinion about Ms. Richardson.

76. Defendant's false report spoiled a promising, well-paying job with Medical Services of America for Ms. Richardson. The position Ms. Richardson sought and was offered by Medical Services of America paid $30 per hour. The part-time position perfectly suited Ms. Richardson's schedule and desire to make more money for her current goals.

77. For this reason, Ms. Richardson was looking forward to attending her scheduled training and working for this great company.

78. However, Ms. Richardson's dream of starting this ideal job was quashed by Defendant's unreasonable procedures that resulted in Defendant publishing extremely stigmatizing and false information to Ms. Richardson's prospective employer. The inaccuracies embarrassed her and made her feel stigmatized and no longer excited at the prospect of working for this company.

79. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

80. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time

and money trying to correct her background check report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

81. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

82. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

83. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

84. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

85. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

86. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

87. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

88. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: January 16, 2024,

*/s/ Levi Y. Eidelman*
Levi Y. Eidelman, MD Bar No. 30903
**CONSUMER ATTORNEYS**
300 Cadman Plaza West, 12th Floor, Suite 12049
Brooklyn, NY 11201
T: (718) 360-0763
E: leidelman@consumerattorneys.com

*Attorneys for Plaintiff*
*Darlene Virginia Richardson*